IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARIAM BAH and THIERNO SOW, | |
| Plaintiffs, | |
| v. | 1:13-cv-2571-WSD |
| MARK LITTLE, Deputy U.S. Marshal, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Mark Little's ("Little") Motion to Dismiss [6] ("Motion") for failure to state a claim and Plaintiff Mariam Bah's ("Bah") and Thierno Sow's ("Sow") (collectively, "Plaintiffs") Motion to Extend Time to Serve John Doe Defendants [10] ("Motion to Extend").

**I.    BACKGROUND**

On August 5, 2013, Plaintiffs filed a Complaint against Defendant Little, a Deputy Marshal in the Northern District of Georgia and against "John Does 1-7" (the "John Doe Defendants," and, sometimes collectively with Little, "Defendants"), who are allegedly "US Deputy Marshals and/or Police Officers in their individual capacities." (Complaint at ¶ 1). Plaintiffs bring this Bivens v. Six

Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) action, alleging that Defendants violated their constitutional rights.

Plaintiffs allege in their Complaint that on or about October 17, 2012, Plaintiffs "heard pounding on the front door of their home." (Id. at ¶ 5). "When Plaintiff Bah opened the Door, Defendants pointed their weapons at Plaintiff Bah." (Id. at ¶¶ 2, 6). Defendant Little "demanded to know if [Plaintiff Bah] was Mariam Bah." (Id. at ¶ 2, 7).

After Plaintiff Bah confirmed her identity, "Defendants stormed into Plaintiffs['] home, guns drawn." (Id. at ¶ 2, 8). Plaintiffs assert that Defendant Little "refused to let Plaintiff Bah retrieve her 5 and 7 year old daughters and held Plaintiffs in their living room against their will." (Id. at ¶ 9). Plaintiffs allege that, as Defendants continued their search of Plaintiffs' home, Defendant Little asked Plaintiffs if they knew an Ado Bah, "who was wanted for attempted murder charges in New York. (Id. at ¶ 11). When Plaintiffs responded that they did not, Defendant Little asked Plaintiffs if "they knew an Ibrahim Bah," Ado Bah's father. (Id.). "Defendant Little later explained that Plaintiff Bah dated a man almost ten years earlier who was the father of a man who was wanted for murder in New York. (Id. at ¶ 2). "Plaintiff Bah responded that the Ibrahim Bah she knew did not have a son. (Id. at ¶ 11).

Plaintiffs allege that the name "Ibrahim Bah" and the last name "Bah" are very common names in Guinea, and that Defendants' decision to enter Plaintiffs' home was based upon Plaintiffs' race and national origin.  (Id. at ¶¶ 12-13).  Plaintiffs assert that the Defendants did not apply for a search warrant for Plaintiffs' home, and that Defendant Little, as "supervisor on the scene" instructed the John Doe Defendants to enter Plaintiffs' home without a search warrant.  (Id. at ¶¶ 17, 19).  "Defendants' search [of Plaintiffs' home] yielded nothing."  (Id. at ¶ 14).

Plaintiffs allege that: (1) Defendants violated Plaintiffs' Fourth Amendment right by entering their home "without a search warrant, without Plaintiff's [sic] consent, and absent exigent circumstances" (Count One); and (2) Defendants violated the Equal Protection Clause because "their decision to raid Plaintiffs' home was based solely upon Plaintiff's [sic] race and national origin" (Count Two).[1]  (Id. ¶¶ 22-23).  Plaintiffs seek compensatory and punitive damages and

---

[1]  In Count Two, Plaintiffs assert that if their last name was "American in nature," like "Jones, Smith, [or] Jackson," Defendants would have "taken additional precautions and conducted sufficient research" to show that Plaintiff Bah was "never remotely connected to the person Defendants were seeking to arrest."  (Id. ¶ 25).  They also assert that Defendants' "dislike of non-Americans motivated and drove their decision to invade [their] home without first obtaining a warrant" and that Defendants "have never raided a home of a person with an American sounding name just because of their name."  (Id. ¶¶ 26-27).

attorneys' fees.

On August 23, 2013, Plaintiffs attempted to serve the John Doe Defendants by waiver of service of process. On November 27, 2013, Plaintiffs filed their first "Motion to Extend Time to Serve Defendants" [5]. On November 27, 2013, the Court granted Plaintiffs an additional sixty (60) days to serve the John Doe Defendants.

On December 19, 2013, Defendant Little filed his Motion to Dismiss for failure to state a claim upon which relief can be granted.[2] Defendant Little contends that Counts One and Two of Plaintiffs' Complaint do not meet the pleading standards set forth in <u>Twombly</u> and <u>Iqbal</u>. Defendant Little also asserts that he was not the supervisor of the John Doe Defendants, and is thus entitled to qualified immunity. (Motion at pp. 10-19).[3] On January 14, 2014, Plaintiffs filed their Motion to Extend.

---

[2] Defendant Little's counsel notes that she does not have authority to represent the John Doe Defendants but that the arguments in the Motion, in relation to Count Two of Plaintiffs' Complaint, would also apply to the John Doe Defendants.

[3] On December 31, 2013, Plaintiffs filed their Response in Opposition [8] to the Motion. On January 10, 2014, Defendant Little filed Reply [9].

## II.   DISCUSSION

### A.   Standard of Review

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (dismissal appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action").

In considering a motion to dismiss, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010), cert. denied, 132 S. Ct. 245 (2011).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the Court is not required to accept

conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

The complaint ultimately is required to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Mere "labels and conclusions" are insufficient.  Id. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully" or the "mere possibility of misconduct," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 678-79 (citing Twombly, 550 U.S. at 557).  The well-pled allegations in a complaint must "'nudge[] [a party's] claims across the line from conceivable to plausible.'"  Am. Dental, 605 F.3d at 1289 (quoting Twombly, 550 U.S. at 570).[4]

---

[4]   Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

B.  Analysis

1.  Pleading Sufficiency

Defendant Little argues that Plaintiffs' Complaint fails to satisfy the pleading standard set forth in Twombly and Iqbal. (Motion at pp. 8-10, 19-22). Regarding Count One, Defendant Little argues that the Complaint fails to provide "factual contentions that [Defendant Little] supervised the John Doe [D]efendants." (Id. at p. 20). Defendant Little also argues that Plaintiffs fail to allege that he personally searched Plaintiffs' home in violation of the Fourth Amendment. (Id.). Defendant Little argues that, at most, the Complaint alleges that the John Doe Defendants searched Plaintiffs' home without consent. (Id. at p. 21). Regarding Count Two, Defendant Little argues that Plaintiffs failed to plead any facts to support their contention that he targeted Plaintiffs because of their race or national origin. (Id. at p. 9).

The Court finds that Plaintiffs' Fourth Amendment claim satisfies the Twombly and Iqbal pleading standard. Defendant Little's characterization of the Complaint allegations is not fairly based on the allegations made. The Complaint, especially paragraphs 2, 5, 8, 9, and 11 when read individually and together, allege that Defendant Little was an integral part of the law enforcement team that knocked on Plaintiffs' door and entered their home without a search warrant. The

7

Complaint does not allege that Defendant Little was acting only as the John Doe Defendants' supervisor, but rather that he was an active search participant. The Complaint alleges that "Defendants stormed into Plaintiffs['] home" and "Defendants conducted a search of Plaintiffs' home . . . ." (Complaint at ¶¶ 2, 8). Defendant Little is named as one of the "Defendants." The Complaint generally alleges that during the search of Plaintiffs' home, Defendant Little was functioning as the "supervisor on the scene."

"In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." United States v. Santa, 236 F.3d 662, 675 (11th Cir. 2000) (quoting Payton v. New York, 445 U.S. 573, 590 (1980)). "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id. The Complaint expressly and implicitly alleges that Defendant Little and the John Doe Defendants were at Plaintiffs' residence searching for Ado Bah.[5] A search for a suspect in a person's home without first obtaining a search warrant, absent some set of excepted circumstances such as exigency or consent, generally is not legal. See Steagald v. United States, 451 U.S. 204, 213-15 (1981).[6]

---

[5]   In their Response to the Motion, Plaintiffs state that the Defendants had an arrest warrant. (Response at p. 2).

[6]   The Supreme Court noted:

Considering the Complaint allegations as true and giving Plaintiffs the benefit of all reasonable inferences, the Court concludes that Plaintiffs have met the Twombly and Iqbal plausibility showing for a Fourth Amendment violation. Plaintiffs allege that Defendant Little appeared at Plaintiffs' residence and entered their home without a warrant, consent, or exigent circumstances. By itself, and if proved, this could be a violation of the Fourth Amendment. See Santa, 236 F.3d at 675. Plaintiffs also allege that all of the Defendants searched Plaintiffs' home and that Defendant Little engaged in the further alleged conduct of holding Plaintiffs against their will in their living room. (Complaint at ¶¶ 9, 11). This additional conduct, if true, could constitute a seizure for Fourth Amendment purposes. See Chandler v. Sec'y of Florida Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) ("A 'seizure' under the Fourth Amendment occurs 'when the officer, by means of physical force or show of authority, terminates or restrains [a person's]

---

> A contrary conclusion—that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant— would create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances. Moreover, an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place.

Steagald, 451 U.S. at 215.

freedom of movement, through means intentionally applied.'") (citing Brendlin v. California, 551 U.S. 249, 254 (2007)). Plaintiffs thus allege "enough facts to state a claim to relief that is plausible on its face." See Twombly, 550 U.S. at 570.

The Court finds that Plaintiffs' Equal Protection claim does not satisfy the Twombly and Iqbal pleading standard. "The Equal Protection Clause of the Fourteenth Amendment states that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citation omitted).

To support their Equal Protection claim, Plaintiffs assert that the Defendants' decision to raid their home was "based solely upon Plaintiff's [sic] race and national origin," and was motivated by their "dislike of non-Americans." (Complaint at ¶¶ 24, 26). Plaintiffs assert that if they had a more "American" last name, Defendants would have taken additional precautions before engaging in the search of Plaintiffs' home, which would have shown that Plaintiffs were not connected to Ado Bah. (Id. at ¶ 25). Plaintiffs allege that Defendants "have never raided a home of a person with an American sounding name just because of their name." (Id. at ¶ 27).

"Factual allegations must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). To establish an equal protection violation, Plaintiffs must show that Defendant Little's conduct "was motivated by an intent to discriminate." Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993). "Discriminatory intent may be found 'even where the record contains no direct evidence of bad faith, ill will or any evil motive on the part of public officials.'" Id. (quoting Williams v. City of Dothan, Ala., 745 F.2d 1406, 1414 (11th Cir. 1984)).

Plaintiffs allege that Defendants' dislike of non-Americans motivated their decision to enter Plaintiffs' home. (Complaint at ¶ 26). Plaintiffs also allege that Defendants would not have conducted themselves in the same manner if Plaintiffs had more "American" sounding names. (Id. at ¶ 25-27). While the Court will construe reasonable inferences in Plaintiffs favor, "'unwarranted deductions of fact' are not admitted as true in a motion to dismiss." Aldana, 416 F.3d at 1248 (quoting So. Fla. Water Dist. Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir.1996)). Plaintiffs do not provide any facts to support their speculative

11

claim about Defendants' motives.[7]  Plaintiffs have failed to state a plausible claim for relief under the Equal Protection Clause.  See Iqbal, 556 U.S. at 678-79.  This claim is required to be dismissed.

      2.    Qualified Immunity

Defendant Little asserts that he has qualified immunity from Plaintiffs' claims.  (Motion at pp. 10-19).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (citations and quotations omitted).  To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  Crosby v. Monroe, 394 F.3d 1328, 1332 (11th Cir. 2004).  Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.  Id.  To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional

---

[7]    Plaintiffs have also provided a plausible, non-discriminatory, reason for looking for Ado Bah at Plaintiffs' home -- the, albeit mistaken, belief that Plaintiff Bah was connected to Ado Bah's father.

right the defendant violated was "clearly established" at the time he did it.  Id.

It is undisputed that Defendant Little was performing a "discretionary function," and that prong of qualified immunity is met.  See id.  The Court thus turns to the remaining prongs.  It is well established that the Fourth Amendment prohibits entering a person's home without a warrant, without consent or without exigent circumstances.  See, e.g., Santa, 236 F.3d at 675.  The issue the parties focus on here is whether Defendant Little is alleged to have committed a constitutional violation when, as alleged in the Complaint, he entered Plaintiffs' home without a warrant, seized Plaintiffs, and searched Plaintiffs' home.  Entering a home without consent,[8] exigent circumstances, or a warrant can violate the Fourth Amendment.  See id.  The Court here does not conclude, but assumes for the purpose of the Motion, that the facts alleged in the Complaint are true.  The Court thus finds that Plaintiffs have alleged sufficient facts, if true, to preclude dismissal of Plaintiffs' Fourth Amendment claim asserted against Defendant Little

---

[8]  Defendant Little, in his Motion, disputes that the search was conducted without Plaintiffs' consent. (Motion at p. 21 n.4.).  In their Complaint, Plaintiffs assert that the entry of their home and the search were done without their consent. (Compliant at ¶¶ 2, 19, 22).  In considering Defendant Little's Motion to Dismiss, the Court assumes that the factual allegations in the Complaint are true and therefore assumes that Plaintiffs did not consent to entry of their home.  See Wooten, 626 F.3d at 1196.

on the basis of qualified immunity.[9]

Defendant Little is entitled to qualified immunity on Plaintiffs' Equal Protection claim. The Court, having already noted that Plaintiffs failed to properly plead an Equal Protection violation, finds that, based on the allegations of the Complaint alone, Plaintiffs have not alleged sufficient facts to show that Defendant Little is not entitled to qualified immunity as to this claim. See Crosby, 394 F.3d at 1332. Plaintiffs have the burden to establish that Defendant Little is not entitled to qualified immunity, see id., and the Court concludes that Count Two of Plaintiff's Complaint is required to be dismissed.

C. Motion to Extend

Plaintiffs describe, in the Complaint, the John Doe Defendants as "US Deputy Marshals and/or Police Officers." On November 27, 2013, the Court granted Plaintiff an additional sixty (60) days to serve the John Doe defendants. Plaintiffs assert that "without discovery of Mark Little, Plaintiff will be unable to determine the identity of the John Doe Defendants." (Motion to Extend at ¶ 6).

---

[9] Defendant Little, in his Motion, focuses solely on whether Plaintiffs properly established a claim for supervisory liability. (Motion at pp. 13-21). Plaintiffs allege that Defendant Little violated their Fourth Amendment rights directly, and not simply as a supervisor, when he entered their home and held them in their living room against their will. Assuming the allegations to be true and giving Plaintiffs the benefit of all reasonable inferences, the Court, as noted, concludes that their currently is not a basis to dismiss Count One based on qualified immunity.

14

"As a general matter, fictitious-party pleading is not permitted in federal court."  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  An exception to the general rule exists allowing a plaintiff to name fictitious party defendants where discovery is needed to determine the identity of such person and the complaint adequately identifies the defendants.  See Moulds v. Bullard, 345 F. App'x 387, 390 (11th Cir. 2009) (citing Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir.1992).  Plaintiffs meet this test.  Plaintiffs may be able to determine the identity of Defendant Little's fellow officers once discovery commences, and the Court will grant Plaintiffs' Motion to Extend.

## III.  CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Mark Little's Motion to Dismiss [6] is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** with respect to Count Two of the Complaint.  It is **DENIED** with respect to Count One of the Complaint.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time [10] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs have sixty (60) days from the date of this Order to serve the John Doe Defendants.

**SO ORDERED** this 26th day of August, 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE